Commonwealth ex rel. Hall *v.* Board of Probation and Parole.
Commonwealth ex rel. Blair *v.* Board of Probation and Parole.

Argued September 7, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Leslie B. Handler,* with him *Handler and Handler,* for petitioner, Frank Hall.

*John M. Wajert,* for petitioner, Milton A. Blair.

*Salvatore J. Cucinotta,* Deputy Attorney General, with him *Leonard Packel,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth.

OPINION BY PRESIDENT JUDGE BOWMAN, November 12, 1971:

These two actions in mandamus question the statutory power and authority of the Pennsylvania Board of Probation and Parole to extend the expiration date of a court imposed maximum sentence of an individual who, while on parole, committed a crime for which he was not convicted until after the expiration date of the court imposed maximum sentence.

Our limited original jurisdiction in this area has recently been delineated in *Williams v. Pennsylvania Board of Probation and Parole,* 2 Pa. Commonwealth Ct. 312 (1971) and exists only because the *habeas corpus* relief sought is ancillary to a civil action or proceedings against a state agency which draws into question its statutory power and authority.

Blair and Hall are prisoners in the state correctional system who initially came within the jurisdiction of the Board to act with respect to them when they became eligible for parole. However, until the Board acted favorably upon their parole applications, custodial authority remained with the state correctional system under the court imposed maximum sentences.

Upon release on parole, Blair and Hall came under the custodial authority of the Board subject, in terms of time, to the court imposed maximum sentences except as the statute in question directs a different result or empowers the Board to order a different result.

Petitioners seek a definitive determination of their right to be free of custodial authority after expiration of the court imposed maximum sentence in relation to the power and authority of the Board to extend the expiration date of such sentence under the somewhat complicated factual histories of these cases.

\* \* \* \* \* \*

Milton A. Blair was sentenced to a term of two and one-half to five years in 1963 to begin on October 29, 1964 at the conclusion of a previously imposed federal sentence. He became eligible for parole on April 29, 1967 and was paroled on that date with two and one-half years remaining to be served on his original maximum sentence, which would expire October 29, 1969.

On October 29, 1967, Blair was arrested on a narcotics charge in Philadelphia and released on bail. He was again arrested on May 29, 1968 in Philadelphia on assault charges and continued on bail.

On January 21, 1969, effective December 28, 1968, Blair was declared delinquent by the Board for failure to report to his parole officer. He was apprehended on January 22, 1969 and recommitted as a technical parole violator pursuant to the Act of August 6, 1941, P. L. 861, as amended, 61 P.S. §331.21a. Twenty-four days

were added to his original maximum sentence to conform with the Parole Act requirement that no credit be given for delinquent time on parole.[1] Therefore, his recomputed maximum sentence would expire on November 23, 1969. He does not question this extension of the expiration date of his court imposed maximum sentence.

Reparole was refused to Blair after an interview before the Board in June 1969 and recommitment was continued pending disposition of the outstanding criminal charges against him.

On October 30, 1969, Blair had not yet come to trial on the criminal charges and the Board decided to rescind temporarily its earlier recommitment action to permit Blair's release on bail with respect to the open charges against him.[2]

The Board's warrant of arrest was formally withdrawn on November 23, 1969, the extended expiration date of the recomputed maximum sentence.[3] On Decem-

---

[1] "(b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record, may be recommitted after hearing before the board. If he is so recommitted, he shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be reentered to serve the remainder of his original sentence or sentences. . . ." 61 P.S. §331.21a(b).

[2] Coincidentally, Blair was not released from custody because of a detainer lodged against him by federal authorities on charges not directly related to this case.

[3] Blair asserts in his brief and in his original complaint in mandamus that he was not actually released from custody to be available for bail on the open charges until November 26, 1969, three days *after* his recomputed maximum sentence expired. He argues *inter alia* that the Board had no jurisdiction to retain custody beyond the expiration of the maximum sentence as legally

ber 24, 1969, Blair was convicted on the narcotics charge of October 29, 1967. The Board refiled its detainer against Blair on that date and subsequently recommitted him to serve the unexpired balance of two years and six months on his sentence as a convicted parole violator. He was given full credit for the period January 22, 1969 to November 23, 1969 (ten months and one day) which he had served as a recommitted technical parole violator and an appropriate reduction was made in the time remaining to be served on his sentence.

\* \* \* \* \* \*

Frank Hall was found guilty of various criminal charges and sentenced to a term of two and one-half to five years on February 25, 1964. He became eligible for parole on August 25, 1966 but was not actually paroled until February 25, 1967 because of the Board's uncertainty as to his ability to fulfill the conditions necessary for such release at the earlier date. Three months after his conditional release, on April 16, 1967, he was arrested on charges of carrying a concealed deadly weapon and released on bail. He was again arrested on additional charges on July 22, 1967. Bail was again posted and he was released. A third arrest occurred on January 27, 1968 and Hall was again released on bail. On April 15, 1968, he was tried on the charges incident to the first arrest and found not guilty.

---

extended or that he should be given credit against any further sentence for these three days. In its answer to Blair's original complaint, the Board does not contest Blair's recitation of the facts and therefore for the purposes of this case admits them as true. *See* Pa. R.C.P. 1029. Since the Board admits by its failure to deny such allegations in an affirmative pleading, we must conclude that Blair is entitled to a credit of three days on his new sentence (*see* below) because the Board lacked jurisdiction to retain him in custody after the expiration of his recomputed sentence and before disposition of the open charges against him.

Hall failed to report to his parole officer after November 24, 1968 and was declared delinquent by the Board as of that date. His original maximum sentence expired on February 25, 1969 but he remained within the custodial authority of the Board because of his declared delinquent status. He was apprehended on other charges on September 19, 1969 and returned to prison as a technical parole violator pending disposition of the criminal charges. Hall owed three months and one day on his original sentence because of his delinquency and his recomputed maximum sentence would then expire on December 20, 1969.

However, on December 8, 1969, the Board rescinded temporarily its warrant issued at the time of Hall's delinquency in November 1968 permitting his release on bail as to the outstanding charges against him. Hall remained in custody nonetheless on a bench warrant issued by the Philadelphia District Attorney's office.

On January 30, 1970, Hall was tried on the July 1967 charges and found guilty; he was sentenced to serve four to twelve months in the county prison. On the same day, he pleaded guilty to the January 1967 charges and was sentenced to a one year's probation.

On the basis of the latter conviction, the Board met, interviewed Hall, and recommitted him as a convicted parole violator to serve the balance of his original five-year sentence, that is, two years less a credit for time served as a declared technical parole violator beyond his recomputed maximum sentence. The Board took this recommitment action on April 10, 1970 and recomputed Hall's new maximum sentence to expire on January 29, 1972.[4]

---

[4] The Board contends in the report of its Chairman, Richard W. Lindsay, contained in the record, that Hall's recommitment as a convicted parole violator became effective on February 25, 1970 and that his new maximum sentence should be computed by adding the two years served on parole to that date, that is, February 25, 1972.

\* \* \* \* \* \*

This essential question as to both Blair and Hall concerns the Board's statutory right to recommit each of them as convicted parole violators for crimes admittedly committed *while on* parole but for which each was not convicted until *after* the expiration of the maximum sentence as originally court imposed or extended by Board action for delinquency while on parole. We are faced with the task of determining whether the Board had the authority to recommit them upon conviction of crimes committed while on parole even though it could not otherwise exercise custodial authority over them *after* their court imposed maximum sentences or Board extended maximum sentences had expired.

Under the Act of August 6, 1941, *supra,* the Board must give credit against sentence to parolees who violate the conditions of parole, short of commission and conviction of a new crime (so called "technical parole violators"), for all parole time except delinquent time. "[The technical parole violator] . . . shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be re-

---

The Board then subtracted twenty-six days from the two years for the period January 30, 1970 to February 25, 1970 because Hall was apparently in prison under a Board detainer during that period although the record is not clear as to Hall's status between the January 30, 1970 sentencing and the Board's recommitment action of April 10, 1970. In sum, the Board has not fully stated the basis on which it calculated the recomputed sentence.

Further, we cannot help but notice the Board's unexplained failure to credit Hall for the time during which he was in the custody of the Board after September 19, 1969 (when he was apprehended and detained as a technical parole violator) and December 8, 1969 (when the Board's detainer was lifted). This eighty-day period (or eighty-one days as Hall's counsel contends in his brief) is not accounted for or explained anywhere in the Board's brief or in the admittedly sparse record. We therefore shall include appropriate directions to the Board in our order as to crediting Hall's sentence for this period in custody.

entered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board. . . ." 61 P.S. §331.21a(b).

Prior to a determination of guilt by a trial court, a parolee charged with committing a crime while on parole cannot be designated as a convicted parole violator. "(a) Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole. . . ." 61 P.S. §331.21a (a).

The Board's statutory ability to retain a prisoner-parolee in its legal custody ceases as to a technical parole violator at the conclusion of his maximum sentence as extended to compensate for delinquent time. Therefore, as to Hall and Blair, the Board ceased to have the right to detain either of them after the expiration of their recomputed maximum sentences on December 20, 1969 and November 23, 1969 respectively. The mere fact that the Board lifted its warrants permitting release of these petitioners during the weeks pre-

ceding expiration of the maximum sentences has no direct bearing on the issue before this Court for even if the Board had not rescinded its warrant against Hall and Blair, its rights to *in personam* custody would cease with the expiration of the maximum sentences.

Nor does the fact that both Hall and Blair became subject to the custody of other authorities on other charges have any legal relevance to the matters before this Court. If the Board has a right to recommit Hall and Blair to serve the balances of their original sentences upon conviction of crimes committed while on parole subsequent to the termination of legal custody over their persons, it has such right regardless of its prior administrative actions as to the lifting of a detainer or the detention of the petitioners by other authorities.

Despite this maneuvering on the part of the Board in attempting to retain control over Hall and Blair by releasing them into the hands of other authorities pending the outcome of their trials, we must conclude that such maneuvers although questionable are legally irrelevant and that the Board does have jurisdiction to recommit Hall and Blair as it has done. We base our decision both on the clear language of the parole statutes and the substantial case law both in our Pennsylvania courts and in the federal courts on the nature and policies of parole regulation.

The section of the Act of August 6, 1941, *supra*, discussing convicted parole violators contains explicit and unmistakable language as to the time of conviction for a crime committed while on parole. The time of conviction is specified as ". . . at any time *thereafter* in a court of record . . ." [Emphasis ours]. Clearly, "thereafter" refers to the indefinite time period *after* commission of the crime and is not limited to the expiration date of the original or extended maximum sentence.

The brief submitted by the Board points out that if any other interpretation were given to Section 10 (than to include convictions *after* the expiration of the original sentence), prisoners would be encouraged to seek indefinite postponement of their trials for crimes committed during parole so as to avoid serving the balance of original sentences as convicted parole violators. We conclude that the Legislature in amending the parole provisions in 1941 could not have contemplated or countenanced the absurd interpretation that a parolee could avoid recommitment as a convicted parole violator by the fortuitous or planned delay of his trial beyond the period of his original sentence.

The late President Judge Rhodes of the Superior Court discussed the interpretation of the meaning of "thereafter" in *Commonwealth ex rel. Wright v. Maroney,* 201 Pa. Superior Ct. 118, 191 A. 2d 866 (1963). While not elaborating on his conclusion, he stated: "Relator is required to serve the balance of his term [the period served on parole], for a crime committed while on parole . . . regardless of when the conviction for the crime committed on parole took place. [citing cases]" 201 Pa. Superior Ct. at 122, 191 A. 2d at 868.

The prisoner in that case was arrested during his parole period on charges of robbery, assault and battery. About three months after the expiration date of his maximum sentence, he pleaded guilty to the charges and was recommitted as a convicted parole violator to serve the balance of his earlier sentence. We interpret that balance to be not simply the period remaining on the original sentence at the time of arrest but the entire period served on parole less any credit for time actually in custody.

We are supported in our conclusion by the opinion in *Commonwealth ex rel. Meinzer v. Smith,* 118 Pa. Superior Ct. 250, 180 A. 179 (1935). Although the *Meinzer* opinion was written before the enactment of the

1941 amendments to the parole provisions with which we are here concerned, the Superior Court was dealing with identical language found both in the earlier Act of June 19, 1911, P. L. 1055, as amended, 61 P.S. §305, and the later Act of August 6, 1941, *supra.* In both, a convicted parole violator must be reentered to serve the "remainder of the term" which he would have been required to serve had he not been paroled under his original sentence.

The *Meinzer* opinion states: "We think it is plain that 'remainder of the term' refers to the portion of the sentence actually left on the date of the release on parole and not on the date of violation of the parole. If one is given a sentence in the penitentiary for not more than eight years nor less than four, and is let out on parole at the end of four years, the term unserved is four years. That remainder is not changed or lessened until it is reduced by further actual service. Ordinarily, a parole does not suspend, set aside or shorten the term of the sentence. It simply gives to the convict the chance to earn, by good conduct, his release from further imprisonment and his restoration to society. While he is released on parole, subject to certain regulations, nevertheless, he is set free from prison restraint and confinement. Certainly, he is not serving time in the penitentiary as contemplated by the sentence imposed." 118 Pa. Superior Ct. at 254-55, 180 A. at 181. Therefore, Hall and Blair must serve the "remainder" of their terms existing at the time they were first paroled.[5]

The constitutional validity of the Board's exercise of its sound discretion in recommitting a convicted

---

[5] *See* Note, 30 Temp. L. Q. 309, 319 (1957) : "[T]he date which is used to calculate the amount of the sentence yet to be served is the date on which parole was granted, the rule being that where the prisoner is remanded to prison, he must serve the remainder of his term without commutation."

parole violator for the balance of his term calculated from the date of original parole has repeatedly been voiced by our Supreme Court, *Commonwealth ex rel. Thomas v. Myers*, 419 Pa. 577, 215 A. 2d 617 (1966), and echoed by the federal courts interpreting Pennsylvania law, *see, e.g., United States ex rel. Heacock v. Myers*, 251 F. Supp. 773 (E. D. Pa. 1966). Further, that mandamus is the proper method of challenging the legal exercise of such discretion by the Board has similarly been declared in numerous cases. *See United States ex rel. Heacock v. Myers, supra.*

On the basis of the *Wright* decision permitting recommitment of a convicted parole violator by the Board where conviction occurs *after* expiration of the original maximum sentence, we must conclude that the Board has the power to recommit and having exercised its discretion in recommiting Hall and Blair for the balance of their sentences, their court imposed maximum sentences must be recomputed as to expiration dates, as mandated by the statute, to compensate for time spent on parole in otherwise good standing.

Hall and Blair argue alternatively that even if the Board possesses such power to recommit for the balance of the term, it must act promptly to "reacquire" jurisdiction over the parolee after his conviction of the crimes committed during the parole period and that it has not done so. Of course, both Blair and Hall were out of the legal custody of the Board after the expiration of their maximum sentences and before conviction; the Board's detainer could attach to them only upon conviction when the Board's custodial authority over them would again attach.

How long after the expiration of the original sentence and the subsequent conviction such power must be exercised is a question of reasonableness. Ten years may constitute undue delay but the few months here involved can certainly not be so categorized considering

the complexity of administrative processes today. Our Superior Court has said concerning the violation of the conditions of probation: "[T]he question reduces to whether the delay in the revocation and the imposition of the prison sentence is reasonable. It is sufficient that the court which imposed the probation should act promptly after the violation is discovered or, in the case of an accusation of crime, after the conviction, even though the probationary period has expired meanwhile." *Commonwealth v. Duff,* 201 Pa. Superior Ct. 387, 395, 192 A. 2d 258, 262-63 (1963).[6]

We therefore make the following

### ORDER

The Complaints in Mandamus filed by petitioners, Milton A. Blair and Frank Hall, are hereby dismissed insofar as they contest the jurisdiction of the Pennsylvania Board of Probation and Parole to recommit petitioners as convicted parole violators after the expiration date of their original maximum sentences. As to the computation of that portion of the original sentence which each must serve, the Board is directed to recompute the petitioners' sentences to credit them with all time actually spent in its custody, consistent with this opinion.[7]

---

[6] Again, speaking on the subject of *probation* violations and resulting sentencing, the Superior Court ruled that five months in the circumstances of that case was unreasonable delay. *Commonwealth v. White,* 218 Pa. Superior Ct. 188, 279 A. 2d 768 (1971). We cannot conclude that the circumstances of *White* control the facts before us absent a positive showing of prejudicial delay in recommitment on the part of the Board.

[7] *See* footnotes 3 and 4, *supra.*